391 A.2d 1066

**COMMONWEALTH of Pennsylvania and Lt. M. Van Leer, Appellants,**

v.

**Richard S. STERLACE.**

Supreme Court of Pennsylvania.

Argued March 10, 1977.

Decided Oct. 6, 1978.

8

James W. Dunn, Jr., Pittsburgh, for appellants.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

McCandless Township's Board of Commissioners enacted Ordinance No. 662 to regulate the distribution of advertising materials. Ordinance No. 662 provides, in pertinent part:

"It shall be unlawful for any person, firm, or corporation to distribute advertising material at a residence within the township (other than at the home of the person, firm or corporation distributing the same) by placing such material at the residence, on the property or on the residential mail box of the person owning or occupying the residence, unless the person, firm or corporation distributing such advertising material does so based upon the affirmative request or consent of the person occupying the residence. The foregoing provision shall not apply to the

distribution of advertising material through the United States mail service."

Appellee Richard Sterlace, engaged in the business of distributing advertising materials to McCandless Township residences, filed a complaint in the Court of Common Pleas to enjoin enforcement of the Ordinance pending a determination of its constitutionality. The Ordinance was held constitutional and injunctive relief was denied by the court (Silvestri, J., sitting in Equity). Appellee was then charged with violations of Ordinance No. 662, found guilty in magistrate's court, and fined $30. After a trial de novo in the Court of Common Pleas, his conviction was affirmed.

The Commonwealth Court held Ordinance No. 662 unconstitutional under the first and fourteenth amendments to the Constitution of the United States. We granted allowance of appeal and now reverse.[1]

*I. Regulating the Time, Place or Manner of Speech*

The United States Supreme Court has long recognized that all "time, place and manner" regulations—that is, regulations addressed not to the content of speech, but to some condition of its occurrence—burden the flow of speech. But it has always been necessary to show more than the existence of such an increased burden. To strike a time, place or manner regulation as violative of the first and fourteenth amendments to the Constitution, it is necessary to establish that, given the nature of the governmental interests, the regulation unduly burdens protected speech. Mr. Justice Marshall, speaking for the Court, has recently reaffirmed this view:

> "Our cases make equally clear, however, that reasonable 'time, place and manner' regulations may be necessary to further significant governmental interests, and are permitted. . . .

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp.1978). This was reassigned to the writer on September 29, 1978, for the purpose of preparing an opinion expressing the views of the majority of this Court.

The nature of a place, 'the pattern of its normal activities, dictate the kinds of regulations of time, place and manner that are reasonable.' . . . [I]n assessing the reasonableness of a regulation, we must weigh heavily the fact that communication is involved; the regulation must be narrowly tailored to further the State's legitimate interest." (footnotes omitted)

*Grayned v. City of Rockford*, 408 U.S. 104, 116–17, 92 S.Ct. 2294, 2303–04, 33 L.Ed.2d 222 (1972) (upholding city anti-noise ordinance regulating speech on land adjacent to school while school is in session).

More recently, Chief Justice Burger, for the Court, reiterated:

"[a] narrowly drawn ordinance, that does not vest in municipal officials the undefined power to determine what messages residents will hear may serve these important [municipal] interests without running afoul of the First Amendment."

*Hynes v. Mayor and Council of Borough of Oradell*, 425 U.S. 610, 617, 96 S.Ct. 1755, 1759, 48 L.Ed.2d 243 (1976) (overturning, as unconstitutionally vague, ordinance conditioning right to solicit door-to-door on giving advance written notice to police).

Thus, to pass constitutional muster as a regulation of "time, place and manner", Ordinance No. 662 must be narrowly drawn, "leav[ing] open ample alternative channels for communications," *Linmark Associates, Inc. v. Township of Willingboro*, 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977) citing *Virginia Pharmacy Bd. v. Virginia Consumer Council*, 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976), and protecting a significant government or public interest. L. Tribe, *American Constitutional Law*, 581–582 (1978). It need not be shown that the chosen means is the "least restrictive alternative." [2]

2. Mr. Justice Manderino's citation to *Linmark*, supra, to support the use of a least restrictive alternative analysis cannot be justified. The Court in *Linmark* held the ordinance banning property owners from placing "For Sale" signs on their land to be directed toward "regulat-

## II. Ordinance No. 662 as a Time, Place and Manner Regulation

■ The Commonwealth Court correctly concluded that this ordinance "applies to all advertising, both commercial and non-commercial." [3] The preamble, too, clearly demonstrates that the township's concerns were not with the expressive content of any speech, but were entirely focused on the place and manner in which material was to be distributed.[4] Finally, nothing in the record indicates that

ing the *content* of communication," *Linmark,* supra, 431 U.S. at 93, 97 S.Ct. at 1619 (emphasis added). Mr. Justice Marshall, speaking for the Court, said:

> "The constitutional defect in this ordinance, however, is far more basic. The Township Council here, like the Virginia Assembly in *Virginia Pharmacy,* acted to prevent its residents from obtaining certain information. That information, which pertains to sales activity in Willingboro, is of vital interest to Willingboro residents, since it may bear on one of the most important decisions they have a right to make: where to live and raise their families. The Council has sought to restrict the free flow of this data because it fears that otherwise, homeowners will make decisions inimical to what the Council views as the homeowners' self-interest and the corporate interest of the township: they will choose to leave town. The Council's concern, then, was not with any commercial aspect of 'For Sale' signs—with offerors communicating offers to offerees—but with the substance of the information communicated to Willingboro citizens."

*Linmark,* supra, 431 U.S. at 96, 97 S.Ct. at 1620. Thus, the Court considered and expressly rejected the argument in *Linmark* that the "For Sale" sign ban was a regulation of "time, place and manner" or that, in the alternative, it was a general regulation of commercial speech. *Linmark,* supra, 431 U.S. at 93, 97 S.Ct. at 1619.

However, in invalidating the ordinance, the Court reaffirmed that the relevant inquiry in a time, place and manner case is (a) whether the regulation focuses on content, (b) whether the state interest is substantial, and (c) whether the regulation leaves open adequate and reasonable alternative means to exercise first amendment rights.

In dicta, *Linmark* assessed the "For Sale" ordinance as regulation of time, place and manner. It concluded that the ordinance would be infirm because it eliminated a traditional forum for home sale in the absence of an adequate number of satisfactory alternatives.

3. Not all advertising proposes a commercial transaction. For example, public service organizations often advertise without proposing commercial transactions.

4. The preamble to Ordinance No. 662 reads in its entirety as follows:
 "WHEREAS, certain persons, firms or corporations have recently begun the distribution of advertising materials to Township

McCandless Township was regulating distribution in order to prevent information conveyed in appellant's advertising materials from injuring the community. Compare *Linmark*, supra note 1. Thus, this regulation may be tested as a regulation of the time, place and manner speech.

The ordinance's preamble clearly establishes the substantial township interests in preventing crime on residential property. There can be no question but that an accumulation of advertising materials at the entry of a residence, whether at a door or mailbox, poses significant risks in a residential area. Such an accumulation would be a clear invitation to burglars and vandals to enter apparently unoccupied premises.

Where, however, the homeowner has expressed a desire to receive materials distributed in the manner and place regulated by Ordinance No. 662, it is clear that this risk is materially reduced. When it is known that these materials are desired, there is ample reason to believe that homeowners in the area will both collect these materials before they can become either litter or eyesores and assume the responsibility, as they do with newspapers and other home doorstep deliveries, to suspend delivery or to arrange for these materials to be picked up in their absence.

Appellee's argument that interests cannot be substantial where homeowner consent constitutes a defense is, as Judge Silvestri concluded, without merit. The consent clause reaffirms the nature of the interests at stake by permitting a risk-creating form of distribution only where there is reason to believe that the homeowner will be an active participant in providing protection from the risks.

> residents by placing or hanging the advertising material on mail boxes or posts or by depositing the said material upon other portions of private property without the request or consent of the owners or occupiers of the property, and;
>
> "WHEREAS, in the judgment of the Board of Commissioners this manner of distribution of advertising materials is unsightly, constitutes an invasion of privacy and, unless picked up by the property owner within a reasonable time, the presence of such advertising material would be a clear indication that the residence was unoccupied and thus increase the possibility of vandalism and/or burglary."

This ordinance is clearly distinguishable from one which might bar *all* home distribution of materials merely to ensure clean streets, cf. *Schneider v. State*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939) (state interest in clean streets insufficient ground to bar all public distribution of handbills), or one where compliance with the ordinance would eliminate use of a traditional forum of speech and leave limited alternatives of increased expense reaching a significantly decreased audience. *Linmark*, supra. Moreover, this regulation does not affect the use of any public facility. *Hague v. CIO*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).

Thus, on a time, place and manner analysis, the only remaining question is whether this ordinance impermissibly burdens the possibility of exercising one's first amendment rights by limiting one means of expression in the absence of satisfactory alternatives for such expression. The scope of this ordinance is so limited that it does not attempt to proscribe any of the "classic" or traditional means of exercising first amendment rights. The township continues to permit door-to-door, face-to-face solicitation and distribution, mail distribution, leafletting in public places and even doorstep distribution. Ordinance No. 662 serves only to condition this last form of first amendment exercise on the consent of the resident in advance of distribution. Thus, it cannot be concluded that inadequate numbers of alternatives are available.

Costs, of course, must be considered in determining the reasonableness of remaining alternatives. *Linmark,* supra, 431 U.S. at 91, 97 S.Ct. at 1618. Their effect must be weighed in the balancing process which follows the determination that an ordinance is a time, place or manner regulation. But McCandless Township is under no duty to ensure advertisers the cheapest method of distribution and here a plethora of alternatives remain open. We hold this Ordinance to be a constitutional regulation of the time, place and manner of speech.

14

## III. Regulating Commercial Speech

 It is error to apply a least restrictive alternative analysis to determine the constitutionality of the ordinance even if it were to be read as a regulation of commercial speech. Commercial speech has only recently been accorded constitutional protection, *Virginia Pharmacy Bd. v. Virginia Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 846 (1976), and therefore the parameters of testing the constitutionality of its regulation are not yet fully established. In no event, however, has the Supreme Court suggested that regulations of commercial speech are constitutional only if they are the least restrictive means to achieve some legitimate state end. On the contrary, the use of such a standard would be inimical to the determination that while commercial speech is protected by the first and fourteenth amendments to the Constitution, the protection afforded is "a limited measure of protection, commensurate with [commercial speech's] position in the scale of First Amendment values, [allowing] modes of regulation that might be impermissible in the realm of non-commercial expression." *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978) (upholding state sanctioning of attorney who "solicited"). The conflicting interests present in commercial speech situations call for a more flexible standard than that invoked by Mr. Justice MANDERINO. Commercial speech is protected at least in part because the party to whom it is addressed has a right to the information which accompanies the proposal of a commercial transaction. *Virginia Pharmacy Bd. v. Virginia Consumer Council*, 425 U.S. at 764–5, 96 S.Ct. at 1827. Where there are adequate and reasonable alternative sources of that information, an ordinance limiting one source will be valid where it protects "a significant governmental interest", *Id.*, 425 U.S. at 771, 96 S.Ct. at 1830, or "important municipal interests". *Hynes v. Mayor and Council of Borough of Oradell*, 425 U.S. 610, 619, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976). Moreover, recent cases of the Supreme Court of the United States suggest that it is constitutionally permissible

to regulate commercial conduct where it produces a detrimental "secondary effect" on the community, *Young v. American Mini-Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (plurality opinion) (upholding Detroit zoning of adult movie houses). See also *Id.* (Powell, J., sustaining ordinance as innovative zoning). The seriously increased risk of vandalism and burglary, which results from the uninvited distribution of advertising materials, would appear sufficient to meet either test and would compel the conclusion that the ordinance is constitutional.

Accordingly, order of the Commonwealth Court reversed.

LARSEN, J., did not participate in the consideration or decision of this case.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice, dissenting.

I must dissent. The majority holds that house to house communication can for practical purposes be completely prohibited. The burden of obtaining the consent of each listener is considered of little consequence to the majority. This is the first time to my knowledge, in the history of free speech that the communicator is required to obtain the permission of the recipient before freely speaking. The whole purpose of the First Amendment is just the opposite. It intends that ideas—true or false—may be circulated *freely*, whether or not the listener consents. The majority has confused the issue, contorted precedent and contrived a result which cannot be reconciled with the Federal Constitution. Apparently if appellant wants relief, he will have to appeal to the United States Supreme Court.

The McCandless Township Ordinance facially applies to all information. As the Commonwealth Court stated:

"In any event, even a cursory examination of Ordinance No. 662 reveals that it attempts to restrict the dissemination of clearly protectable information. It applies to all advertising, both commercial and non-commercial. Moreover, while it is apparent here that the materials distribut-

ed by Sterlace are commercial in nature, even such materials, most probably, contained or were likely to contain some information which is entitled to First Amendment protections . . . " *Commonwealth v. Sterlace*, 24 Pa. Cmwlth. 62, 67, 354 A.2d 27, 29 (1976).

Even assuming the ordinance applies only to commercial advertisements, commercial advertisements enjoy First Amendment protection. *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (decided April 28, 1978); *Linmark Associates, Inc. v. Willingboro*, 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977); *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *Virginia Pharmacy Board v. Virginia Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975). As the Supreme Court stated in *First National Bank of Boston v. Bellotti, supra*, 435 U.S. at 783, 98 S.Ct. at 1419, 55 L.Ed.2d at 722: "A commercial advertisement is constitutionally protected not so much because it pertains to the seller's business as because it furthers the societal interest in the 'free flow of commercial information.'" The salient reasons for First Amendment protection of commercial speech are set forth in *Bates v. State Board of Arizona, supra*, 433 U.S. 350, 364, 97 S.Ct. 2691, 2699, 53 L.Ed.2d 810, 823 (1977):

"[C]ommercial speech serves to inform the public of the availability, nature, and prices of products and services, and thus performs an indispensable role in the allocation of resources in a free enterprise system. In short, such speech serves individual and societal interests in insuring informed and reliable decisionmaking." (Citations omitted)

Arrayed against these substantial interests in the free flow of commercial information are three proffered justifications for Ordinance 662. As stated in its preamble, the Ordinance was enacted because "in the judgment of the Board of Commissioners this manner of distribution of advertising materials [1] is unsightly, [2] constitutes an inva-

sion of privacy and [3], unless picked up by the property owner within a reasonable time, the presence of such advertising material would be a clear indication that the residence was unoccupied and thus increase the possibility of vandalism and/or burglary."

Although the Supreme Court stated in *Virginia Pharmacy Board v. Virginia Consumer Council, supra,* "some forms of commercial speech regulation are surely permissible," 425 U.S. at 770, 96 S.Ct. at 1830, 48 L.Ed.2d at 363, the majority overlooks that ordinances that regulate commercial speech are not saved solely because enacted to achieve a legitimate government interest. *Linmark Associates, Inc. v. Willingboro, supra,* 431 U.S. at 94, 97 S.Ct. at 1619, 52 L.Ed.2d at 163. The law must be necessary to achieve that objective and do so in a manner least restrictive of the First Amendment right asserted. *Id. See also Hynes v. Mayor of Oradell,* 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976); *Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949). While a municipality has the *power* to regulate activities within a community in order to decrease unsightly litter, ensure residents' privacy, and deter burglaries and vandalism. Ordinance 662 impermissibly burdens Sterlace's First Amendment right to disseminate commercial messages.

Sterlace has structured his activity such that one phone call from a particular resident, or one post card, will in almost every case achieve precisely the three public interests allegedly served by Ordinance 662. A single phone call or post card can stop these "unsightly" materials from finding their way to the resident's doorstep or mailbox and will vindicate any privacy interest purportedly violated by a plastic bag quietly placed on the doorstep or attached to the mailbox. As to the third proffered justification—preventing a buildup of such materials so as not to signal to potential burglars or vandals that a resident may be away from home for an extended period of time—we realize that in the limited situation where a resident had never received such advertising materials, left home for a prolonged period of time, and then had the materials delivered to the residence

for the first time while he or she were away, the evil sought to be remedied by the ordinance might exist. In the ordinary course of events, however, this will not be the case. A resident will have already received at least one plastic bag, and just as the resident calls to have the newspaper discontinued during an extended absence from home, he or she can easily call to ensure that materials such as "Shopper's Savers Sacks" are likewise discontinued. We therefore cannot say that this ordinance, requiring Sterlace and others similarly situated to obtain the affirmative consent of every resident to whom they want to distribute advertising material, is "necessary," in a First Amendment context of that word, to achieve those objectives. *See Linmark Associates, Inc. v. Willingboro, supra,* 431 U.S. at 94, 97 S.Ct. at 1619, 52 L.Ed.2d at 163. A significant burden on constitutionally protected speech such as that worked by Ordinance 662 cannot be sustained when the interests sought to be achieved by the ordinance are either readily achieved by other means less restrictive of fundamental rights, or the danger sought to be remedied by the ordinance is rarely present.

I am not unmindful of the "commonsense differences between speech that does 'no more than propose a commercial transaction,' and other varieties," and that these differences "suggest that a different degree of protection is necessary to insure that the flow of truthful and legitimate commercial information is unimpaired." *Virginia Pharmacy Board v. Virginia Consumer Council, supra,* 425 U.S. at 771 n. 24, 96 S.Ct. at 1830, 48 L.Ed.2d at 364 n.24.

Yet I am convinced that notwithstanding the commercial nature of the speech at issue here, Ordinance 662 is unconstitutionally repressive. The effectiveness of Sterlace's method of communication is that the information is brought to the individual attention of each resident. Ordinance 662 gives Sterlace two alternative means of achieving that desired end: obtaining in some way the prior consent of every individual resident, or sending the advertising materials via the mails. The Commonwealth does not dispute, as indeed it could not, that Ordinance 662 makes it more burdensome for

Sterlace to exercise his First Amendment rights. There is thus no question the Ordinance abridges protected expression, and arguably does so in a way that makes it economically and practically unfeasible for Sterlace to exercise that expression which the First Amendment was designed to protect. The First Amendment does not tolerate the burden on protected speech which results from Ordinance 662 because "[t]he right of free speech is guaranteed every citizen that he may reach the minds of willing listeners and to do so there must be opportunity to win their attention." *Kovacs v. Cooper*, 336 U.S. 77, 87, 69 S.Ct. 448, 454, 93 L.Ed. 513, 522 (1949). *See also Thomas v. Collins*, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945).

The Commonwealth contends that the McCandless ordinance is valid because it "especially [attempts] to protect the privacy of its residents' homes," and relies on *Breard v. Alexandria*, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951), which upheld an ordinance requiring solicitors of magazine subscriptions to obtain a resident's prior consent before knocking on that resident's door. The intrusion on personal privacy sought to be curbed by the Alexandria ordinance was much different than is present in this case, however. That ordinance found obnoxious solicitors who knocked on doors and went "in and upon private residences." 341 U.S. at 624, 71 S.Ct. at 923, 95 L.Ed. at 1238. The residents there "did not desire any uninvited intrusion into the privacy of their home[s]." *Id.* at 625, 71 S.Ct. at 923, 95 L.Ed. at 1239. In contrast, any intrusion on privacy occasioned by Sterlace's depositing a plastic bag at a residence is slight. He does not knock on doors, and it is likely that more frequently than not a resident will not know that Sterlace was even at his or her home until the time the plastic bag is discovered. Thus the adjustment made in *Breard* between the right of privacy and the right of expression is necessarily different from the adjustment that must be made in this case.

Not only was the privacy interest more compelling in *Breard*, but the Supreme Court, in balancing that interest against the First Amendment right asserted, was strongly influenced by the fact the selling of magazine subscriptions

"[brought] into the transaction a commercial feature." 341 U.S. at 642, 71 S.Ct. at 932, 95 L.Ed. at 1248. Indeed, the Court in *Virginia Pharmacy Board* noted that *Breard* might be further support, in addition to the principle case of *Valentine v. Chrestensen*, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942), for a commercial speech exception to the First Amendment. 425 U.S. at 758, 96 S.Ct. at 1823, 48 L.Ed.2d at 356. That notion has now been firmly laid to rest, and recent cases holding that commercial speech is constitutionally protected cast considerable doubt on the vitality of *Breard's* First Amendment analysis. Considering this recent development along with the weightier privacy interest involved there, the majority errs when it upholds the constitutionality of Ordinance 662. I therefore dissent.