**AD WORLD, INC.**

v.

**TOWNSHIP OF DOYLESTOWN.**

Civ. A. No. 81–0518.

United States District Court,
E. D. Pennsylvania.

March 25, 1981.

Sherman, Silverstein & Kohl, Cherry Hill, N. J., by Nan S. Famular, Cherry Hill, N. J., for plaintiff.

Harris & Harris, Warrington, Pa., for defendant; Blank, Rome, Comisky & McCauley, by Sheldon L. Albert, Philadelphia, Pa., of counsel.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

This is an action challenging the constitutionality of an ordinance which makes it unlawful to distribute advertising material by certain means to residences without the consent of their owners or occupiers. At issue are the competing values behind the right of the people to freedom of speech, as guaranteed by the First Amendment to the United States Constitution, and the obligation of the state to protect the public's health, safety, and welfare through use of the police power. For the reasons to follow, we conclude that the challenged ordinance is constitutionally valid. The plaintiff's claims for damages and injunctive relief are therefore denied, and judgment is entered in favor of the defendant and against the plaintiff.

### I.

Ad World, Inc. (Ad World) is the publisher of the "Piggy-Back", a sixteen page advertising bulletin which includes a few pages of consumer and community information. This publication is distributed weekly to 129,001 residences in central and lower Bucks County, Pennsylvania, including 3,000 in the Township of Doylestown. Ad World distributes each bulletin in a plastic bag, which is placed at the residence by a carrier who attaches it to a mail box hook or leaves it on a porch, sidewalk, lawn or some other location on the premises. All costs are paid by the bulletin's advertisers, and there is no charge to its recipients.

The Board of Supervisors of the Township of Doylestown (Doylestown) has enacted Ordinance No. 117, which provides as follows:

### ORDINANCE NO. 117

AN ORDINANCE OF THE TOWNSHIP OF DOYLESTOWN, BUCKS COUNTY, PENNSYLVANIA, REGULATING THE DISTRIBUTION OF ADVERTISING MATERIALS AT RESIDENCES WITHIN THE TOWNSHIP.

WHEREAS, certain persons, firms or corporations have recently begun the distribution of advertising materials to Doylestown Township residents by placing or hanging the advertising material on mail boxes or posts or by depositing the said material upon other portions of private property without the request or consent of the owners or occupiers of the property, and

WHEREAS, in the judgment of the Board of Supervisors this manner of distribution of advertising materials is unsightly, constitutes an invasion of privacy and unless picked up by the property owner within a reasonable time, the presence of such advertising material would be a clear indication that the residence was unoccupied and thus increase the possibility of vandalism and/or burglary.

BE IT ORDAINED, by the Board of Supervisors of the Township of Doylestown, Bucks County, Pennsylvania and it is hereby Ordained and Enacted by authority of same:

1. That it shall be unlawful for any person, firm or corporation to distribute advertising material at a residence within Doylestown Township (other than at the home of the person, firm or corporation distributing the same) by placing such material at the residence, on the property or on the residential mail box of the person owning or occupying the residence, unless the person, firm or corporation distributing such advertising material does so based upon the affirmative

request or consent of the person occupying the residence. The foregoing provision shall not apply to the distribution of advertising material through the United States mail service.

2. That any violation of this Ordinance shall be considered a summary offense and upon conviction before a district justice, the violator shall be subject to a fine not exceeding $300.00. Each unlawful distribution to a residence shall be considered as a separate offense.

3. That this ordinance shall be added to the Code of Ordinances of the Township of Doylestown, Bucks County, Pennsylvania, and shall be effective five (5) days after its legal enactment.

Plaintiff asserts that as a result of the enactment of the ordinance, it is prohibited from distributing its publication, and that if it continues to distribute its publication, it will be cited for violation of the ordinance, thereby creating a financial burden which it is unable to bear.

Ad World thus contends that the ordinance prescribes the distribution of a type of communication and as such violates its constitutional right to freely speak, print and disseminate its publication. Damages and injunctive relief are sought.

Defendant argues that the ordinance is necessary to protect residents from potential burglars and vandals, who would otherwise be alerted by the accumulation of advertising materials, such as plaintiff's publication, that a residence was apparently unoccupied. Defendant denies that the ordinance is unconstitutional as it does not proscribe speech, printing or dissemination, or the distribution of a type of communication, but rather merely regulates a method of delivery.[1]

## II.

The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ," and is made applicable to the states via the Fourteenth Amendment. *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 500, n.8, 72 S.Ct. 777, 780 n.8, 96 L.Ed. 1098 (1952). The First Amendment's protection encompasses commercial speech, that is, expression related solely to the economic interests of the speaker and its audience, but to a lesser degree than other constitutionally guaranteed expression. *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Since the Doylestown ordinance specifically applies only to advertising materials, it is a restriction upon commercial speech.[2] Since plaintiff's publication is an advertising bulletin, it is *a fortiori* expression related solely to the economic interests of the speaker and its audience. We must therefore engage in the four-step analysis for commercial speech cases developed by the United States Supreme Court:

At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Id.* 100 S.Ct. at 2351.

## III.

### A.

There is no question but that the plaintiff's advertising publication is protect-

---

1. In addition, defendant argues that this court should decline to rule on this matter on the ground of abstention. We reject that contention as it is clearly erroneous.

2. This singling out of a particular type of speech is not an impermissible subject matter or content restriction. *See Consolidated Edison Co. of New York, Inc. v. Public Service Commission of New York*, 447 U.S. 530, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980) and *id.* at 580, n.2, 100 S.Ct. at 2337, n.2 (Stevens, J., concurring in the judgment).

ed by the First Amendment. Commercial speech is entitled to such protection, and there is absolutely no indication nor even any allegation that the publication does not concern lawful activity or that it is misleading. *See Id.*

### B.

As justification for the ordinance, defendant asserts that it is necessary in order to prevent crime on residential property. According to defendant the presence of advertising material, which has been left on, but not removed from a mailbox, step, porch, sidewalk or lawn, is a signal to would-be criminals that a residence is apparently unoccupied at the moment. This governmental interest in protecting the public from crime is of course substantial. *See, Hynes v. Mayor and Council of Borough of Oradell,* 425 U.S. 610, 616–19, 96 S.Ct. 1755, 1758–60, 48 L.Ed.2d 243 (1976); *Martin v. City of Struthers,* 319 U.S. 141, 144, 63 S.Ct. 862, 863, 87 L.Ed. 1313 (1943).

### C.

We consider next the relationship between the ordinance and the state's interests. We conclude that the accumulation of advertising materials at a residence poses significant risks to the public, as it is a clear invitation to burglars and vandals to enter apparently unoccupied premises. *See, Commonwealth v. Sterlace,* 481 Pa. 6, 12, 391 A.2d 1066, 1069 (1978).

We reject the plaintiff's argument that this link between the regulation and the state's interest is forged upon a mere unfounded possibility. The testimony of Doylestown Police Lieutenant White amply supports the connection between unoccupied residences and increased burglaries and vandalism.

By prohibiting the distribution of advertising material without consent, the ordinance will reduce the amount of printed material which can accumulate at a residence, thereby diminishing the risk of attracting criminals. It, therefore, directly advances the stated governmental interest.

### D.

We address now the critical inquiry in this case: whether the ordinance is more extensive than is necessary to serve the asserted governmental interest. We conclude that it is not.

The Doylestown ordinance is clearly circumscribed in scope and effect. It specifically applies only to advertising material, and prohibits only a certain manner of distribution made without the consent of the intended recipient. It does not affect any non-commercial expression, such as political speech, and does not prevent distribution of advertising materials by other means with the consent of the intended recipient. The requirement that the consent of owners or occupiers of township residences be secured before advertising materials can be left on their property does not unduly burden the free speech rights of those who would distribute such materials. Reasonable time, place, or manner regulations that serve a significant governmental interest and leave ample alternative channels for communication have long been recognized as valid. *Consolidated Edison Co., Inc. v. Public Service Commission of New York,* 447 U.S. 530, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1978); *see, e.g. Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941) (parade license and fee requirement held constitutional).

The ordinance at issue is identical to the one held valid by the Pennsylvania Supreme Court in *Commonwealth v. Sterlace,* 481 Pa. 6, 391 A.2d 1066 (1978). The court there found the ordinance clearly distinguishable from those which ban all solicitation or distribution of handbills or printed materials for an insufficient reason, *see, e.g., Schneider v. State,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939), or eliminate a traditional forum of speech and leave limited alternatives of increased expense reaching a significantly decreased audience, *see, e.g., Linmark Associates, Inc. v. Township of Willingboro,* 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977) (prohibition of "for sale" signs on front lawns). 481 Pa. at 13, 391 A.2d at 1070.

Significantly, there is no limitation or infringement imposed upon the opportunity of plaintiff or other disseminators of protected commercial expression to *solicit* potential recipients of advertising materials in order to attempt to win their consent. *See, Martin v. City of Struthers*, 319 U.S. 141, 147, 63 S.Ct. 862, 865, 87 L.Ed. 1313 (1943) (ban on door-to-door solicitation held invalid as applied to distribution of religious material); *but see, Breard v. City of Alexandria*, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951) (ban on door-to-door commercial solicitation held valid, but case decided before Court's recognition, *see, e.g., Central Hudson*, that First Amendment protection extends to commercial speech), and *Hynes v. Mayor and Council of Borough of Oradell*, 425 U.S. at 619, 96 S.Ct. at 1760 (door-to-door solicitation "not immune from regulation under the state's police power").

Plaintiff's reliance on *Van Nuys Publishing Co. v. City of Thousand Oaks*, 5 Cal.3d 817, 97 Cal.Rptr. 777, 489 P.2d 809 (1971) is of no avail. The ordinance in that case, held unconstitutional, was similar to the one promulgated by Doylestown in that it required consent before various printed matter could be distributed on the grounds of a house, but unlike the Doylestown ordinance, was not limited solely to a ban on distribution of advertising materials, but applied as well to the distribution of political materials. Additionally, and also in contrast to the Doylestown ordinance, its asserted purpose was merely to reduce litter and protect unwilling listeners, goals equally served by a more narrowly drawn provision.

In the case *sub judice*, a more limited regulation simply would not be effective to achieve the governmental objective of preventing crime by regulating the accumulation of materials which create the appearance that a residence is unoccupied. For example, we can postulate a regulation which would require owners or occupiers of residences to affirmatively object before distribution of advertising materials could be prohibited. However, residents who are not at home at the time of an attempted delivery of a publication, such as plaintiffs, would be unable to object to its receipt until some later time. Yet, during that interval before objection could be made, material would accumulate at the residence and thereby serve to signal its vulnerability and to invite criminal activity. In contrast, where an owner or occupier of a residence has expressed a desire to receive advertising materials, as required by the Doylestown ordinance, the risk of burglary or vandalism is greatly reduced, for the resident will know of the delivery and can collect the materials before they accumulate. *See, Commonwealth v. Sterlace*, 481 Pa. at 12, 391 A.2d at 1069. If a resident will be away from home, arrangements can be made for another to remove them before they accumulate, just as arrangements are commonly made for a neighbor to collect the mail of an absent fellow resident.