**AD WORLD, INC., Plaintiff,**

v.

**TOWNSHIP OF DOYLESTOWN, Defendant.**

Civ. A. No. 81–0518.

United States District Court, E.D. Pennsylvania.

June 12, 1985.

Sheldon L. Albert, Philadelphia, Pa., for plaintiff.

Paul Bender, Philadelphia, Pa., for defendant.

## MEMORANDUM

WEINER, District Judge.

Plaintiff brought this action challenging the constitutionality of an ordinance which made it unlawful to distribute advertising material by certain means to residences without the owner's or occupier's consent. We denied the plaintiff's claim for injunctive relief and damages. 510 F.Supp. 851 (E.D.Pa.1981). On appeal, the Court of Appeals for the Third Circuit held that the ordinance was unconstitutional, and remanded the case to us for further proceedings with respect to the plaintiff's damage claim consistent with its opinion. 672 F.2d 1136 (3d Cir.1982).

We entered an injunction on April 13, 1982 enjoining the defendant from enforcing the ordinance. Presently before the court is the motion of the plaintiff for damages of $330,000 and attorneys fees and costs of $82,164.00. The parties agreed to submit evidence as to damages, attorneys fees and costs by affidavits of witnesses.

## DAMAGES

The plaintiff claims that it was threatened with immediate prosecution under the ordinance during the period of time that the ordinance was in effect, between April 17, 1981 and April 13, 1982. During that approximate one year period, the plaintiff alleges that it suffered monetary damages as follows:

1. Increased out-of-pocket costs of using the U.S. mail service instead of hand delivery house-to-house .................. $ 80,000
2. Decreased net advertising revenues as compared with net revenues had the ordinance not be enacted ..................... $150,000
3. General damages for unconstitutional prohibition of the exercise of First and Fourteenth Amendment Rights .. $100,000

" 'The Cardinal principle of damages in Anglo-American law is that of *compensation* for the injury caused to plaintiff by defendant's breach of duty.' 2 F. Harper & F. James, Law of Torts § 25.1, p. 1299 (1956) (emphasis in original)." *Carey v. Piphus*, 435 U.S. 247, 254–55, 98 S.Ct. 1042, 1047–48, 55 L.Ed.2d 252 (1978). The burden is, of course, on the plaintiff to prove that it suffered an injury caused by the deprivation of its First and Fourteenth Amendment rights. "[A]n invasion of a constitutional right must be accompanied by actual injury to be compensable by anything more than nominal damages." *Keyes v. Lauga*, 635 F.2d 330, 336 (5th Cir.1981) (citing *Carey* ).

The plaintiff's first claim for damages is its alleged increased out-of-pocket costs of using the United States mail service instead of hand delivery. It alleges that after the temporary restraining order was dissolved,[1] it was compelled by the immediate threat of prosecution under the ordinance to refrain from hand carried house-to-house distribution, and instead to use the mail service. The plaintiff further alleges that the costs of mail distribution were

approximately twice the costs of its usual hand-carried house-to-house delivery. (Plaintiff's motion, paragraph 4).

The affidavit of William A. Smith ("Smith"), president of the plaintiff corporation, dated February 22, 1985 sets forth that the additional cost to plaintiff for mailing during the one year period when the ordinance was in effect was $72,900.00. (see also defendant's Exhibit # 1, page 4). Defendant contends that the increased cost was for mailing in the entire Central Bucks County area, of which Doylestown Township constitutes only 10.6% of houses in that entire area. Defendant therefore asserts that only $7,727.40 (10.6% of $72,900.00) is attributable to damages in this case. Smith claims, however, that the plaintiff would not have undertaken any mail delivery in that area had the ordinance not been enacted. Smith further avers that "[p]laintiff's preferred method of delivery for its publication is and always has been carrier home delivery." (Smith Affidavit, p. 5). Smith also claims that he used mail delivery in the entire Central Bucks area because he feared that other townships might enact ordinances similar to that of Doylestown Township.

In spite of Smith's assertion in his February 22, 1985 affidavit that the plaintiff has and still prefers carrier home delivery, the plaintiff still continues mail delivery even though the ordinance has not been in effect since April 13, 1982. In fact, the plaintiff's advertising copy for solicitation of advertisers sets forth that plaintiff delivers the "Piggy-Back" (plaintiff's publication), "presorted (ready for postman's bag) to four satellite post offices ..." (defendant Exhibit 3). The defendant submitted the affidavit of Lieutenant Stephen White ("White") of the Doylestown Police Department who resides at 11 Providence Ave., Doylestown Township, Pa. White attached to his affidavit as Exhibit A a copy of the Piggy-Back dated September 11, 1984, which he received by mail. The address label af-

---

1. This action was commenced on February 10, 1981. This court issued an order temporarily restraining the defendant from enforcing the

ordinance. That Order was dissolved on April 17, 1981.

fixed to the Piggy-Back set forth: "Resident 11 Providence Ave., Doylestown, PA 18901."

■ The defendant argues that since plaintiff continues to use the mail for delivery even though the ordinance has not been in effect since April 13, 1982, the plaintiff did not suffer actual injuries and is at best entitled to only nominal damages. The defendant further argues that there is a lack of causal link between the existence of the ordinance and the mailing of the Piggy-Back because plaintiff continues to use the mails even though the ordinance is no longer in effect. Defendant, however, failed to present any evidence to contradict plaintiff's assertion that it would not have started using the mails, but for the ordinance. The fact that plaintiff continues to use the mail does not impair its claims for damages during the period of time the ordinance was in effect. We therefore award damages of $7,727.40 to plaintiff on its claim for increased out-of-pocket costs for mailing instead of hand delivery during the one year period that the ordinance was in effect in Doylestown Township. We find that plaintiff is not entitled to damages for mailing in the entire Central Bucks County area. The court finds no merit in Smith's assertion that the mail delivery became necessary in that entire area because plaintiff feared the enactment of similar ordinances in other townships.

■ The next claim of the plaintiff for damages is for decreased net advertising revenues because of the ordinance. Smith averred that the enactment of the ordinance caused a sharp dropoff in advertising lineage which he attributed to the charge by the defendant that Piggy-Back was a contributing cause of burglary and other anti-social behavior. Smith went on to state that "[t]here is, to my knowledge, no other conceivable reason for this sudden decline." (Smith affidavit, p. 6). This is merely a conclusory allegation, and does not sustain the plaintiff's burden of prov-

ing damages. We find, therefore, that plaintiff is not entitled to damages for this claim.

■ The third claim of the plaintiff is for general damages for unconstitutional prohibition of its rights under the First and Fourteenth Amendments. The plaintiff has failed to present any evidence to sustain its burden of proving this alleged element of damages, and we, therefore, deny the award damages for this claim.

■ In his affidavit Smith raised another claim for damages which the defendant argues against in its memorandum in opposition to plaintiff's motion for damages.[2] This claim of the plaintiff is for damages for loss of pre-printed insert income due to increased charges for using mail instead of hand delivery. In his affidavit, Smith averred that an established edition of the Piggy Back carried between 8 and 16 preprint 16 page inserts per week, depending on the season of the year. He states that the Central Bucks edition, a new edition, would have achieved an average of three 16 page pre-prints per week during 1981 had the ordinance not been acted. He concludes that as a result of the pre-print rate increase resulting from the enactment of the ordinance which caused mail delivery, the Central Bucks edition carried only an average of 1½ 16 page pre-prints each week during the year the ordinance was in effect. (Smith affidavit, pages 8, 9). This again is merely a conclusion on the part of the plaintiff unsupported by supportive testimony. Plaintiff has failed to sustain its burden of proving damages as to this claim, and we therefore find it is not entitled to damage.

We therefore award damages to the plaintiff in the total amount of $7,727.40.

## ATTORNEY FEES

Congress has provided that a successful plaintiff in a civil rights action may recover a reasonable attorney's fee from the de-

2. Although Rule 20 of the Local Rules of Civil Procedure provides that every motion shall be accompanied by a form of order, and, if contested, by a brief, plaintiff failed to file either a form order or brief.

fendant. 42 U.S.C. § 1988. It is clear that the categories of cases included within § 1988 include those cases alleging violations of first amendment rights. *Universal Amusement Co., Inc. v. Vance,* 587 F.2d 159 (5th Cir.1978) (en banc.) *aff'd.* 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980), *reh'g denied* 446 U.S. 947, 100 S.Ct. 2177, 64 L.Ed.2d 804 (1980); *Rosado v. Santiago,* 562 F.2d 114 (1st Cir.1977). In this circuit, the calculation of such an award is governed by the dictates of *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973) (*Lindy I*) and *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir.1976) (en banc) (*Lindy II*).

Under these cases, the first item to be determined is the "lodestar" which consists of two factors: hours of service and the hourly rate of compensation. As noted in *Lindy I,* "[t]he value of the attorney's time is generally reflected in his normal billing rate." 487 F.2d 161, 167. The determination as to whether an hourly rate is reasonable is made "by taking into account such factors as the attorney's legal reputation, status and the nature of activity which the attorney performed." *Meisel v. Kremens,* 80 F.R.D. 419, 421 (E.D.Pa.1978). Two other factors must then be considered to determine the actual fee award: the contingent nature of success and the quality of the attorney's work as reflected by the complexity and novelty of the issues presented, the judge's observations and the amount of recovery obtained. *Lindy I,* 487 F.2d 161, 168.

Plaintiff makes two claims for attorney's fees. One for the services rendered by the law firm of Sherman, Silverstein & Kohl (Sherman), which represented the plaintiff in this court and one for Paul Bender, Esq., who prepared the plaintiff's appeal. The Sherman petition is for $8,864 while the Bender petition $70,800.

■ The only documentation submitted to the court to substantiate the Sherman claim are copies of receipts indicating payment by the plaintiff of the claimed amount along with copies of the bills sent to plaintiff by Sherman. These bills do not, however, adequately document the claimed charges. They do not state the firm's hourly billing rate, the status of the firm member who performed the services or the hours of service that were rendered. The information contained in the billing letter concerns only the nature of the services rendered, the date such services were rendered, and the total due for the listed services. The Smith affidavit which accompanied the documents offers no further details as to these charges. Without this basic information the court is unable to determine a lodestar figure upon which to base a fee award.

■ As this court stated in *Hinkley v. E.I. duPont deNemours and Co.,* 583 F.Supp. 11, 13 (E.D.Pa.1983), "[t]he reasonable number of hours is a question of fact to be determined by the court. And the burden is on counsel to file adequately documented applications for fees detailing the time spent for each task. Those who fail to meet that burden do so at their own risk." (citations omitted). The documents submitted do, however, establish that Sherman did render services to the plaintiff in pursuance of a claim ultimately to be proven successful. We find that although the plaintiff has failed to substantiate the full amount of its claim for Sherman's attorney's fees it is entitled to recover $2,000 as a reasonable reimbursement for its payments to Sherman.

■ Plaintiff also claims $70,800 for attorney's fees of Paul Bender. Mr. Bender, who handled the plaintiff's appeal, is presently the Dean of the Arizona State University College of Law. Plaintiff claims a total of 177 hours at a rate of $200 per hour for a lodestar figure of $35,400. In addition, the plaintiff asserts that a multiplier of 2.0 should be applied to take into account the contingent nature of the claim and the quality of Mr. Bender's work in successfully asserting the appeal. Plaintiff's total fee request for Mr. Bender is therefore $70,800.

As with its claim for Sherman's fees, the plaintiff has not submitted detailed time sheets to substantiate its request. The only documentation provided to the court is a statement in the plaintiff's motion of the hours devoted to particular aspects of the bringing of the appeal and a copy of Mr. Bender's desk calendar on which he had noted only the total of hours he spent each day on the case. It appears that Mr. Bender did not keep a simultaneously prepared time record of his activities. While it is true that a reconstructed time record which is reasonably accurate may be used by the court in awarding fees, *Bolden v. Pennsylvania State Police*, 491 F.Supp. 958, 963 (E.D.Pa.1980), the schedule submitted in plaintiff's motion is no more than an estimate of the actual time devoted to each of the activities in prosecuting the appeal. We set forth below the breakdown of hours submitted in the plaintiff's motion and what the court finds to be a reasonable time allotment for each activity.

| ACTIVITY | PLAINTIFF'S CLAIMS | COURT'S FINDINGS |
| --- | --- | --- |
| preparation of appellate brief | 85 hours | 70 hours |
| preparation of response to Defendant's motion to strike portion of record in Court of Appeals | 10 hours | 7 hours |
| preparation of plaintiff's reply brief | 15 hours | 10 hours |
| preparation of memorandum in opposition of amicus brief | 3 hours | 3 hours |
| preparation for oral arguments | 15 hours | 10 hours |
| preparation of plaintiff's opposition to defendant's motion for stay | 10 hours | 7 hours |
| preparation of plaintiff's brief in opposition to defendant's petition of certiorari | 30 hours | 20 hours |
| preparation of plaintiff's motion for entry of injunction | 5 hours | 5 hours |
| research for plaintiff's application for fees | 4 hours | 2 hours |
| TOTAL | 177 | 134 |

The other component of the lodestar is the hourly rate. Plaintiff requests a fee of $200 per hour. The plaintiff has not, however, revealed in its brief whether this constitutes Mr. Bender's standard hourly fee. A lawyer's normal hourly rate is a convenient point of departure. It does not, however, necessarily establish a reasonable rate for purposes of a fee petition. *See Baughman v. Wilson Freight Forwarding*

*Co.*, 583 F.2d 1208, 1217 (3d Cir.1978). The important determinations are what constitutes a reasonable hourly fee in light of all the circumstances of the litigation, *id.*, and what is reasonable considering the attorney's "experience, knowledge and legal talent." *Lindy II* 540 F.2d 102, 117. Given these criteria, we find $150 to be a reasonable hourly rate for Mr. Bender's services. He is a respected professor specializing in the subject matter of the plaintiff's cause of action.

Additionally, plaintiff seeks an increase in the lodestar because of the contingent nature of its success and the quality of Mr. Bender's work on its behalf. The contingency of success in this case was not one of proving a complex series of factual assertions to a jury, but rather one created by questions of law. In such a situation an attorney is much better suited to determine, before expending his effort, his reasonable chance of success. Unlike a case where success is dependent on proof of factual assertions, success in the case *sub judice* was not predicated on the discovery of certain evidence or the credibility of witnesses. The court finds that a multiplier of 1.2 is sufficient to compensate the contingency created by the question of law raised in this action.

As to the second *Lindy* adjustment factor, the skill of the attorney and the quality of his work, the Supreme Court has recently held in *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) that this is not an appropriate factor in determining whether to increase the lodestar award under 42 U.S.C. § 1988 but instead goes to the question of the hourly rate awarded:

> There may be cases, of course, where the experience and special skill of the attorney will require the expenditure of fewer hours than counsel normally would be expected to spend on a particularly novel or complex issue. In those cases, the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates.

Since we find Mr. Bender's work to have been sufficiently compensated in our award of $150 per hour for his services, we decline to increase the lodestar based upon his skill in preparing the plaintiff's appeal.

Having determined the reasonable number of hours of Mr. Bender's service to be 134 and the hourly rate to be $150, the lodestar figure for Bender is $20,100. When increased by the factor 1.2, the final *Lindy* calculation produces an award of $24,120.

Finally, plaintiff seeks costs of $2,500 incurred in the printing of its brief in opposition to the defendant's petition for certiorari in the Supreme Court. Under 28 U.S.C. § 1920(3), fees for printing may, in the discretion of the court, be taxed as costs. The plaintiff has submitted an invoice from its printer indicating the cost of printing as $1,958.35. The balance of the plaintiff's claim of $2,500 is unsubstantiated. We therefore award the plaintiff costs of $1,958.35.

## ORDER

The motion of the plaintiff, Ad World, Inc., for assessment of damages, attorneys' fees and costs is GRANTED.

It is hereby ORDERED that:

Judgment is entered in favor of the plaintiff and against the defendant, Township of Doylestown, in the amount of $7,727.40.

Costs are assessed in favor of the plaintiff and against the defendant in the amount of $1,958.35.

Counsel fees are awarded as follows:

| | |
|---|---|
| Sherman, Silverstein & Kohl | $ 2,000.00 |
| Paul Bender | $ 24,120.00 |

IT IS SO ORDERED.