**AD WORLD, INC., Appellant,**

v.

**TOWNSHIP OF DOYLESTOWN.**

**No. 81–1497.**

United States Court of Appeals,
Third Circuit.

Argued Nov. 19, 1981.

Decided Feb. 5, 1982.

Certiorari Denied May 17, 1982.
See 102 S.Ct. 2240.

Paul Bender (argued), Philadelphia, Pa., for appellant; Nan S. Famular, Sherman, Silverstein & Kohl, Cherry Hill, N. J., of counsel.

Harris & Harris, Warrington, Pa., Sheldon L. Albert (argued), Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for appellee.

Norman R. Bradley, Philadelphia, Pa., on behalf of amici curiae, Brookshire Publications, Inc., et al.; Saul, Ewing, Remick & Saul, Philadelphia, Pa., John W. Boyd, Freedman, Boyd & Daniels, Albuquerque, N. M., of counsel.

Alice Neff Lucan, Rochester, N. Y., Samuel E. Klein, Katherine Hatton, Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., on behalf of amicus curiae, Equitable Pub. Co.

H. Robert Fiebach, Joseph S. Finkelstein, Lisa A. Heyman, Philadelphia, Pa., on behalf of amicus curiae, The American Civil Liberties Union, Greater Philadelphia Branch; Burton Caine, Philadelphia, Pa., of counsel.

Before GIBBONS and SLOVITER, Circuit Judges, and MEANOR,* District Judge.

### OPINION OF THE COURT

GIBBONS, Circuit Judge.

Ad World, Inc., a publisher, appeals from a judgment in favor of the defendant Doylestown Township in a suit for damages and declaratory and injunctive relief prohibiting enforcement of Doylestown Ordinance 117.[1] We conclude that the ordinance violates Ad World's first and fourteenth amendment rights, and we reverse.

Ad World, Inc. publishes *Piggy Back*, a 16 page tabloid which includes extensive advertising and a few pages of consumer and community information. Included in such community information are notices of community events and announcements. 510 F.Supp. at 853. *Piggy Back* provides coverage of communities and neighborhoods such as Doylestown Township by a free weekly distribution to every home in the area. Delivery is through local route carriers who

---

* Hon. H. Curtis Meanor, United States District Judge for the District of New Jersey, sitting by designation.

1. The district court opinion is reported. *Ad World, Inc. v. Township of Doylestown*, 510 F.Supp. 851 (E.D.Pa.1981). The ordinance ap-

parently was patterned upon an ordinance in another community which in *Commonwealth v. Sterlace*, 481 Pa. 6, 391 A.2d 1066 (1978), was held to be valid. That opinion obviously cannot bind us in our interpretation of the Federal Constitution.

attach the paper in a plastic bag to a mailbox hook or to a door knob or leave it on the premises. Ad World's policy is to stop delivery when a resident so requests, but it does not initially seek the householder's affirmative consent for delivery.

*Piggy Back* is a vehicle for advertisement by local merchants for the local market as well as a vehicle for news and announcements of local origin and interest. Publications such as *Piggy Back* are able, through an almost universal distribution to communities in suburban and rural areas, to make rates per household reached so attractive that local businesses can afford to advertise. Although the bulk of *Piggy Back's* content is advertising, appellant claims that the ratio of editorial and news contents to advertising is not significantly different from that of some metropolitan newspapers. The revenue from ads in *Piggy Back* allows Ad World to deliver its publication free of charge.

In October, 1980, plaintiff began distributing *Piggy Back* to homes in Doylestown Township, Bucks County, in Pennsylvania. On February 3, 1981, the Township enacted Ordinance 117:

AN ORDINANCE OF THE TOWNSHIP OF DOYLESTOWN, BUCKS COUNTY, PENNSYLVANIA, REGULATING THE DISTRIBUTION OF ADVERTISING MATERIALS AT RESIDENCES WITHIN THE TOWNSHIP.

WHEREAS, certain persons, firms or corporations have recently begun the distribution of advertising materials to Doylestown Township residents by placing or hanging the advertising material on mail boxes or posts or by depositing the said material upon other portions of private property without the request or consent of the owners or occupiers of the property, and

WHEREAS, in the judgment of the Board of Supervisors this manner of distribution of advertising materials is unsightly, constitutes an invasion of privacy, and unless picked up by the property owner within a reasonable time, the presence of such advertising material would be a clear indication that the residence was unoccupied and thus increase the possibility of vandalism and/or burglary.

BE IT ORDAINED, by the Board of Supervisors of the Township of Doylestown, Bucks County, Pennsylvania and it is hereby Ordained and Enacted by authority of same:

1. That it shall be unlawful for any person, firm or corporation to distribute advertising material at a residence within Doylestown Township (other than at the home of the person, firm or corporation distributing the same) by placing such material at the residence, on the property or on the residential mail box of the person owning or occupying the residence, unless the person, firm or corporation distributing such advertising material does so based upon the affirmative request or consent of the person occupying the residence. The foregoing provision shall not apply to the distribution of advertising material through the United States mail service.

2. That any violation of this Ordinance shall be considered a summary offense and upon conviction before a district justice, the violator shall be subject to a fine not exceeding $300.00. Each unlawful distribution to a residence shall be considered as a separate offense.

3. That this ordinance shall be added to the Code of Ordinances of the Township of Doylestown, Bucks County, Pennsylvania, and shall be effective five (5) days after its legal enactment.

Faced with an ordinance making its method of distribution illegal, Ad World on February 10, 1981 filed a complaint for an injunction preventing the Township from enforcing the Ordinance and for a declaration that it unconstitutionally infringed the right to free speech and press guaranteed by the first and fourteenth amendments. The complaint also seeks damages.

The District Court held Ordinance 117 to be a restriction on commercial speech and *Piggy Back* to be commercial speech. The court then considered whether the ordinance, as applied to plaintiff's publication,

would pass the constitutional test for restrictions on commercial speech announced in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980).[2] First the court examined the Township's interest, which was posited to be the protection of the public from burglary.[3] It concluded that the accumulation of advertising materials at residences provided a significant risk to the public, in the form of a signal to burglars that the premises were unoccupied. The regulation was thus directly related to the Township's public safety interest. Lastly, the court determined that Ordinance 117 was no more extensive .than necessary to reach the desired result. It therefore upheld Ordinance 117, refused to issue an injunction, and dismissed the complaint.[4]

▋ Ad World contends that *Piggy Back* is noncommercial speech, and that, even if it were commercial speech, the distribution is protected by the first and fourteenth amendments which Ordinance 117 contravenes.[5] Since the first contention is well taken, we need not reach the second.[6]

▋ The district court based its conclusion that *Piggy Back* must be treated as commercial speech on its finding that only a few pages out of 16 in *Piggy Back* were nonadvertising. 510 F.Supp. at 853. We conclude, however, that *Piggy Back* must be considered noncommercial speech. *Piggy Back* performs locally functions that larger metropolitan or regional newspapers undertake: spreading information generally, and providing a medium for advertising. Like such newspapers, it carries news and editorials as well as advertising, in a ratio which appears to be not significantly different from some established metropolitan newspapers. *Piggy Back* appears to be accepted as a newspaper in the Doylestown community, since only 50 out of 3000 households have requested that it not be delivered.

▋ The fact that a publication carries advertisements or that it is for profit does not render its speech commercial for first amendment purposes. *N.Y. Times v. Sullivan*, 376 U.S. 254, 266, 84 S.Ct. 710, 718, 11 L.Ed.2d 686 (1964). There is no evidence that the editorial content is added as a mere sham to convert a pure advertising leaflet into noncommercial speech. *See Valentine v. Chrestensen*, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942). The line between commercial and noncommercial speech for first amendment purposes cannot be drawn by some magic ratio of editorial to advertising content. The important question is whether the publication as a whole relates solely to the economic interest of the speaker and its audience. *Central Hudson Gas & Elec-*

2. The district court properly rejected defendant's contention, repeated to us, that federal courts should abstain from this case. *New Jersey-Philadelphia Presbytery of the Bible Presbyterians v. New Jersey State Bd. of Higher Ed.*, 654 F.2d 868, 883–85 (3d Cir. 1981).

3. No justification in terms of "unsightliness" and "invasion of privacy" was offered by the Township in the district court or here.

4. To avoid prosecution, Ad World has been using the U.S. mails to distribute its paper.

5. Plaintiff also argues that Ordinance 117 is vague and overbroad. We do not reach these claims since we find Ordinance 117 to be unconstitutional as applied.

6. Commercial speech has certain features that allow greater regulation than noncommercial speech. *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 455–56, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978); *Virginia State Bd. of Phar-*

*macy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 770, 96 S.Ct. 1817, 1830 (1976). This difference in treatment pertains, however, to the nature of the commercial speech at issue. *Id.* at 771 n.24, 96 S.Ct. at 1830. Advertisements may be regulated to insure their truthfulness and to prevent harm to the public, *see Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 387–89, 93 S.Ct. 2553, 2559, 37 L.Ed.2d 669 (1973), but that exhausts the difference between these advertisements and noncommercial speech. Ordinance 117, not being focused on the truthfulness of or the harm due to the advertisements, affects *Piggy Back* to the same extent and subjects the ordinance to the same constitutional limitations as if it were affecting pure noncommercial speech. *See generally Central Hudson, supra*, 447 U.S. at 564, 100 S.Ct. at 2350; *Beneficial Corp. v. FTC*, 542 F.2d 611, 619 (3d Cir. 1976), *cert. denied*, 430 U.S. 938, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977).

tric Corp. v. Public Service Commission of N.Y., 447 U.S. 557, 561, 100 S.Ct. at 2349 (1980). Even if a publication such as *Piggy Back* had contained only advertisements, it might be possible to view the publication as qualitatively different from an advertising leaflet put forth by an individual merchant to tout only its own products, because the publication would create a forum in which advertisers compete for the consumers' attention. In view, however, of the conceded fact that each issue of *Piggy Back* contains noncommercial material deserving of full first amendment protection, we need not reach the extent of protection to which it would be entitled in the absence of such material. The Supreme Court has confined the category of "commercial speech" to cases involving "purely commercial advertising." *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973), *see Central Hudson*, 447 U.S. at 561, 100 S.Ct. at 2349.

■ *Piggy Back* is thus entitled to the full protection of the first and fourteenth amendments. That being so, Ad World has the right to distribute its publication. *Martin v. City of Struthers*, 319 U.S. 141, 143, 63 S.Ct. 862, 863, 87 L.Ed. 1313 (1943); *Lovell v. Griffin*, 303 U.S. 444, 452, 58 S.Ct. 666, 669, 82 L.Ed. 949 (1938); *Ex parte Jackson*, 96 U.S. 723, 727, 24 L.Ed. 877 (1878). The first amendment is not absolute; some regulation by the state is permissible. *Cantwell v. Connecticut*, 310 U.S. 296, 304, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). Analyzing the appropriateness of the regulation requires examination of the governmental interests sought to be advanced. Those interests must be substantial. *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968); *NAACP v. Button*, 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963); *Schneider v. State*, 308 U.S. 147, 161, 60 S.Ct. 146, 150, 84 L.Ed. 155 (1939). The touchstone in first amendment cases is, moreover, precision of regula-

tion, *NAACP v. Button*, 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963), and we must therefore determine whether the means adopted by the Township are in fact closely tailored to the desired goal. *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980); *United States v. O'Brien*, 391 U.S. 367, 382, 88 S.Ct. 1673, 1681, 20 L.Ed.2d 672 (1968); *Beneficial Corp. v. FTC*, 542 F.2d 611 (3d Cir. 1976), *cert. denied*, 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977).

■ The Township urges that Ordinance 117 is meant to prevent or to reduce burglary and vandalism. In days of increased crime, a community may be legitimately interested in methods of reducing if not halting crime.[7] Though we are not ordinarily wont to interfere in the exercise of the police power of a state government, or to question the wisdom and effectiveness of its police methods, in matters impinging on the first amendment we may not permit undifferentiated fears to excuse the suppression of first amendment rights. *Cf. Tinker v. Des Moines Independent School District*, 393 U.S. 503, 508, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969) ("undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression").

■ The Township wishes to stop the door to door delivery of plaintiff's *Piggy Back* because the paper is left visible to passers-by and because possible accumulation may tip off burglars that a given home is unoccupied. It has provided no evidence of a strong connection between accumulation of papers and the incidence of burglary. In fact, the Township has undercut its burglary rationale by restricting the regulation to advertising materials. This leaves exempt the delivery of political pamphlets, of religious proselytizing materials or of established newspapers or magazines delivered on subscription. Yet these publications could lead to similar accumulation and

---

7. The number of burglaries in Doylestown increased from 32 to 64 over the 1979–80 period. There is no evidence that the increase occurred in the period following distribution of *Piggy Back*, and no evidence on the *modus operandi* of the burglars.

the same attendant risks. Doylestown fails to explain the difference in treatment. There is, moreover, no evidence that accumulation is so widespread that, even assuming a positive correlation with crime, it suggests more than a hypothetical or speculative increase in burglary. Finally, there is no evidence that consented distribution leads to less accumulation than unconsented distribution. Yet Ordinance 117 allows delivery if a publisher obtains the consent of each householder beforehand.

Plaintiff has used the time honored method of door to door distributions to deliver *Piggy Back*. Fear of vandalism is not a new assertion in justifying regulation of speech rights. In *Martin v. City of Struthers*, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943), the Court examined a regulation that, as a means, *inter alia*, of preventing burglaries, forbade door to door solicitation and distribution of leaflets.[8] *Id.* at 144, 63 S.Ct. at 863. The City of Struthers argued that potential burglars, posing as canvassers or solicitors, could approach and examine a house in preparation of a later break-in. The Court decided that the regulation was invalid despite the substantiality of the city's interest. "Freedom to distribute information to every citizen wherever he desires to receive it is so clearly vital to the preservation of a free society that, putting aside reasonable police and health regulations of time and manner of distribution, it must be fully preserved." *Id.* at 146–47, 63 S.Ct. at 865. If a solicitor or canvasser is thus protected by the first amendment in undertaking a door to door solicitation with its attendant potential for foul play, a publisher such as Ad World is *a fortiori* protected in having a paper delivered door to door and having it left on the front steps or on the mailbox of a home. The *Martin* Court decided that there were less restrictive alternatives for reaching the state goal: the city could enforce its trespass laws against burglars or a homeowner could put up a "no solicitation" sign which would be strictly enforced. Doylestown has not shown why similar solutions would not suffice. Other possibilities come to mind: forms may be attached to the papers that can be returned by a homeowner not wanting to receive *Piggy Back*; a municipal office may channel complaints against distributors; a requirement may be imposed that homeowners take steps to prevent accumulation in their absence. Putting the onus on the homeowner to cure the burglary problem may be appropriate. The Supreme Court has tenaciously protected the right of a speaker to reach a potential listener and get the listener's attention. *Kovacs v. Cooper,* 336 U.S. 77, 87, 69 S.Ct. 448, 453, 93 L.Ed. 513 (1949). It does not seem onerous to impose on the potential listener some of the costs of this important freedom. *Cf. Cohen v. California*, 403 U.S. 15, 21, 91 S.Ct. 1780, 1786, 29 L.Ed.2d 284 (1971) (better for viewer subjected to offensive insignia to avert eyes than for state to regulate badge-wearer); *Schneider v. State*, 308 U.S. 147, 162, 60 S.Ct. 146, 151, 84 L.Ed. 155 (1939) (cannot prevent distribution of leaflets even if this creates the inconvenience for a community of cleaning litter). The Township and the dissent are completely silent on why some method of solving the paper accumulation problem less intrusive on the rights of the press than Ordinance 117 would not be equally effective. It merely reiterates that the regulation is minimal. That is not enough. *See Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981).

Ordinance 117 is not sufficiently related to the state interest advanced to pass constitutional muster. That conclusion is not changed by viewing the ordinance, as Doylestown would have us view it, as a non-content based reasonable time, place and manner regulation. We agree only

8. The city ordinance in that case stated:

It is unlawful for any person distributing handbills, circulars or other advertisements to ring the door bell, sound the door knocker, or otherwise summon the inmate or inmates of any residence to the door for the purpose of receiving such handbills, circulars or other advertisements they or any person with them may be distributing.
*Martin v. City of Struthers*, 319 U.S. at 142, 63 S.Ct. at 862.

that the regulation is not content based. A time, place, and manner regulation must be precisely drawn, however, and Ordinance 117 is not. *Schad, supra,* 452 U.S. at 75, 101 S.Ct. at 2186; *Grayned v. City of Rockford,* 408 U.S. 104, 116–17, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972). In any event, an essential characteristic of any acceptable place, time and manner regulation is that it leave adequate alternative methods of communication. *See Linmark Associates, Inc. v. Township of Willingboro,* 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976). In the face of plaintiff's unrebutted evidence that alternatives to courier delivery are in terms both of time and of money prohibitively expensive, Doylestown has made no such showing.

The judgment appealed from will be reversed and the case remanded for the entry of an injunction against enforcement of Ordinance 117, and for further proceedings with respect to Ad World's damage claim consistent with this opinion.

MEANOR, District Judge, dissenting.

Once again the trumpet of free speech has been sounded. Most unfortunately, the blare has muted the cries of those with equally precious constitutional rights. For the following reasons, I am compelled to dissent.

Less than four years ago, the Supreme Court of Pennsylvania had occasion to determine the constitutionality of an ordinance identical [1] to Doylestown Ordinance No. 117. The ordinance was upheld as constitutional. *Commonwealth v. Sterlace,* 481 Pa. 6, 391 A.2d 1066 (1978). The majority of this court makes only casual reference to the *Sterlace* decision, without explication. I cannot so lightly disregard a decision of

Pennsylvania's highest tribunal. Fundamental tenets of federalism and comity demand much more. At the very least, this court is bound by the construction given to a state statute by the state courts. *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 1885, 44 L.Ed.2d 508 (1975); *Groppi v. Wisconsin,* 400 U.S. 505, 507, 91 S.Ct. 490, 491, 27 L.Ed.2d 571 (1971); *Albertson v. Millard,* 345 U.S. 242, 244, 73 S.Ct. 600, 601, 97 L.Ed. 983 (1952). In our federal system, the state courts are regarded as the principal expositors of state law. *Moore v. Sims,* 442 U.S. 415, 429, 99 S.Ct. 2371, 2380, 60 L.Ed.2d 994 (1979). Indeed, the state court's interpretation of an ordinance is "as though written into the ordinance itself." *Poulos v. New Hampshire,* 345 U.S. 395, 402, 73 S.Ct. 760, 764, 97 L.Ed. 1105 (1952). In *Moore v. Sims, supra,* Justice Rehnquist observed:

Almost every constitutional challenge . . . offers the opportunity for narrowing constructions that might obviate the constitutional problem and intelligently mediate federal constitutional concerns and state interests.

442 U.S. at 429, 430, 99 S.Ct. at 2380.

Essentially, Ordinance No. 117 prohibits the distribution of advertising material by placing such material at the residence, on the property or on the residential mailbox unless the affirmative request or consent of the occupant has been obtained. According to the testimony of William Andrew Smith, President of Ad World, Inc., the publication *Piggy Back* has been distributed by attaching it to the post of a mailbox by means of a nylon strap, by placing it on the porch or on the front steps, or by placing it on the garage doors or on the door knobs of premises in Doylestown.[2] Diane Herring, Doylestown Township Supervisor, testified that complaints were received by the Township Office to the effect that *Piggy Back*

---

1. Except for the insertion of the word "Doylestown" in Section 1 of Doylestown Ordinance No. 117 and the substitution of the word "justice" for "magistrate" in Section 2, Ordinance No. 117 is identical to McCandless Township Ordinance No. 662 which was reviewed by the Pennsylvania Supreme Court in *Common-*

*wealth v. Sterlace,* 481 Pa. 6, 391 A.2d 1066 (1978).

2. Transcript of Temporary Restraining Order hearing, February 19, 1981, at 4, 10 (hereinafter "Transcript").

was "being thrown over the roads and the lawns."[3] Ad World apparently seeks to employ the same method of distribution in which it engaged prior to the enactment of Ordinance No. 117. To this end, Ad World challenges the constitutionality of the ordinance, primarily on first amendment grounds.

It has long been held that the right of freedom of speech and press embraces the right to distribute literature as well as the right to receive it. *Martin v. Struthers*, 318 U.S. 141, 143, 63 S.Ct. 862, 863, 87 L.Ed. 1313 (1942). However, first amendment rights have never been regarded as absolutes. In *Breard v. Alexandria*, 341 U.S. 622, 642, 71 S.Ct. 920, 932, 95 L.Ed. 1233 (1950), it was stated:

> Freedom of speech or press does not mean that one can talk or distribute where, when and how one chooses. Rights other than those of the advocates are involved. By adjustment of rights, we can have both full liberty of expression and an orderly life.

*See also Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, ——, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981). The *Martin v. Struthers* Court recognized that "the peace, good order and comfort of the community may imperatively require regulation of the time, place and manner of distribution." 318 U.S. at 143, 63 S.Ct. at 863.

The type of analysis to be employed in determining the constitutionality of the ordinance depends upon whether the publication is classified as commercial or noncommercial speech. The district court concluded that *Piggy Back* was commercial speech and, consequently, engaged in the four-step analysis[4] for commercial speech cases enunciated in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). I concur with the majority that Ad World's publication cannot be classified as purely commercial speech, i.e., "expression related solely to the economic interests of the speaker and its audience." *Id.* at 561, 100 S.Ct. at 2349. Although *Piggy Back* is comprised predominately of commercial advertisements, it also contains certain items of community interest. Actually, Ad World's publication is a hybrid of both commercial and noncommercial speech. Nevertheless, it is entitled to full first amendment protection as it does not relate *solely* to the economic interests of the speaker and its audience.

I am convinced that Ordinance No. 117 is constitutionally valid as a reasonable place and manner regulation. *Accord, Commonwealth v. Sterlace, supra.* The United States Supreme Court has upheld "time, place and manner" regulations, provided that they are justified without reference to the content of the speech, that they serve a significant governmental interest and that they leave open ample alternative channels for communication of the information. *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. at 647, 101 S.Ct. at 2563, *citing Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976). The majority concedes that the ordinance is not content based. *Accord, Commonwealth v. Sterlace, supra.* The *Sterlace* court construed the ordinance as applicable to all advertising, both commercial and noncommercial. Here, as in *Sterlace*, the preamble to the ordinance indicates that the concern was with the place and manner of distribution rather than with the content of any speech.

The primary justification proffered by Doylestown for the enactment of Ordinance

---

**3.** Transcript at 27.

**4.** For commercial speech to be afforded first amendment protection, it must concern lawful activity and not be misleading, and the asserted governmental interest in regulation must be substantial. If so, it must be determined whether the regulation directly advances the governmental interest asserted and whether it is not more extensive than necessary to serve that interest. *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 564, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980).

No. 117 is that the accumulation of advertising material on private property would be a clear indication that the residence was unoccupied. Thus, the possibility of burglary and/or vandalism was thought to be increased. Additionally, the Township was concerned with the invasion of privacy and the unsightliness of such materials when deposited on private property.[5] A municipality's interest in protecting its citizens from crime and undue annoyance is well recognized. *Hynes v. Mayor of Oradell*, 425 U.S. 610, 616, 96 S.Ct. 1755, 1758, 48 L.Ed.2d 243 (1976); *Martin v. Struthers, supra*, 319 U.S. at 144, 63 S.Ct. at 863. Doylestown's interest in crime prevention certainly is substantial. Surprisingly, the majority characterizes the Township's concern as an "undifferentiated fear," [6] and finds no evidence of a strong connection between the accumulation of advertising materials and the incidence of burglary. The record indicates otherwise. Lieutenant Stephen White of the Doylestown Police Department testified that, based on his experience, there was a correlation between the occurrence of burglaries and indications that residences were unoccupied. He testified that "[s]ome of the perpetrators [of the burglaries] said they looked at several signs that let them know that there is no one there, and one of the signs is advertising in the driveway of the home." [7] Lieutenant White stated that

the number of burglaries in Doylestown had doubled from 32 in 1979 to 64 in 1980. He added that about one-third of the burglaries involved residences where the house was unoccupied or the citizen was on vacation.[8] The police officer further testified that in many instances of investigation of burglaries of unoccupied homes, he found indications that the residence was unoccupied, including the presence of advertising materials.[9]

In *Commonwealth v. Sterlace, supra*, the Supreme Court of Pennsylvania observed:

> There can be no question that an accumulation of advertising materials at the entry of a residence, whether at a door or a mailbox, poses significant risks in a residential area. Such an accumulation would be a clear invitation to burglars and vandals to enter apparently unoccupied premises.

481 Pa. at 12, 391 A.2d at 1069.

Time, place and manner regulations must also leave open adequate alternative means of communication. *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. at 647–648, 101 S.Ct. at 2563–2564. The majority concludes that "[i]n the face of plaintiff's unrebutted evidence that alternatives to courier delivery are in terms of both time and money prohibitively expensive,[10] Doylestown has made no such

---

**5.** The majority concludes that no justification in terms of unsightliness and invasion of privacy was offered by the Township in the district court or here. But the preamble to the ordinance, which was apparently part of the record, plainly recites such justifications for the enactment of the ordinance. Furthermore, Doylestown offered evidence at the February 19, 1981 hearing which is supportive of the unsightliness and privacy justifications. For example, there was testimony that advertising material was "being thrown over the roads and lawns." Transcript at 27. There also was testimony that requests to cease distribution were not honored. Transcript at 14, 27.

**6.** We are referred to *Tinker v. Des Moines Independent School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). In the *Tinker* case, the record failed to establish that the school authorities had reason to anticipate that the wearing of armbands would substantially interfere with the work of the school or impinge upon the rights of other students. *Id.* at

508, 89 S.Ct. at 737. Here, both the record and a common sense approach support the conclusion that the accumulation of advertising outside a place of residence is a signal to would-be burglars or vandals that the residence is unoccupied.

**7.** Transcript at 34.

**8.** *Id.*

**9.** Transcript at 35.

**10.** In this respect, the record is disturbingly deficient. The entire record contains only two references to the "cost" of alternative means of distribution. First, Smith, Ad World's president, testified on cross-examination that the U.S. Post Office is an alternative method of distribution "which is very, very expensive. For the small advertiser in our case it's something he can't afford to do." Transcript at 20. Second, Smith admitted on cross-examination

showing." Anomalously, the majority notes that Ad World has been using the U.S. mails to distribute its publication. Does not this fact, alone, belie plaintiff's "unrebutted evidence"? The use of the U.S. mails for distribution explicitly falls outside the purview of the ordinance.

The ordinance contains no restrictions on the use of public forums for distribution of *Piggy Back*. Nor does the ordinance contain an absolute prohibition on residential distribution; it affects only the *manner* of distribution on private property. Thus, even assuming, *arguendo*, that alternatives to courier delivery are prohibitively expensive, Ad World may continue courier delivery by altering its present manner of distribution. Significantly, Ad World's president admitted on cross-examination that the carrier could knock on the door and hand the publication to someone in the home.[11] The Pennsylvania Supreme Court in *Sterlace* construed an identical ordinance to permit door-to-door, face-to-face solicitation and distribution, as well as mail distribution and leafletting in public places. 481 Pa. at 13, 391 A.2d at 1070. Also, Ad World may continue its present manner of distribution if the request or consent of the occupant is obtained. *Commonwealth v. Sterlace, id.* The conclusion is inescapable that ample alternative avenues of distribution are available to plaintiff.

For the foregoing reasons, I vote to affirm.

---

that Ad World's manner of distribution is less expensive than distribution by knocking on the door. Transcript at 17, 18. What is apparent is that, other than the conclusory statement of Smith with respect to the use of the U.S. Post Office, there is no evidence that alternatives are prohibitively expensive.

