WOODBURY DAILY TIMES COMPANY, INC., a corporation of the State of New Jersey, Plaintiff,

v.

TOWNSHIP OF MONROE, a municipal corporation of the State of New Jersey, Defendant.

Civ. A. No. 85–249.

United States District Court,
D. New Jersey.

June 5, 1985.

Thomas H. Ward, Woodbury, N.J., for plaintiff.

William R. Pearson, Herman, Pearson & Crass, P.A., Woodbury, N.J., for defendant.

GERRY, District Judge.

### I.

This case involves an ordinance of the Township of Monroe which limits the manner in which one may disseminate published materials.

This matter was before the court not long ago. The plaintiff, the publisher of an advertising periodical containing some news, sought to enjoin the enforcement of an ordinance which, in essence, restricted newsboys from indiscriminately throwing written materials other than pure newspapers on people's lawns. That ordinance suffered from one glaring infirmity: it was not content-neutral, as it made distinctions between non-commercial and commercial speech. We granted a temporary restraining order (TRO), which, by agreement of the parties, remained in force long past its expiration date.

That ordinance has now been superseded by a new ordinance, which was enacted on March 20, 1985 and took effect 20 days later. Whatever other problems this ordinance may have, this one appears to be content-neutral. The superseded ordinance gave "newspapers" an exemption; they could be distributed however the distributor chose. Under the new ordinance, news-papers share in the prescriptions and proscriptions borne by "circulars, ... advertisements, commercial handbills, handbills, or the like."

Plaintiff still believes that the ordinance is unconstitutional and now seeks summary judgment: a declaration of the ordinance's infirmity and an injunction against enforcement. The plaintiff has amended its complaint to take into account the new ordinance.

### II.

The preamble to the new ordinance states that the ordinance is enacted with the goals of reducing or preventing burglary and vandalism and controlling litter. The ordinance then sets forth "Distribution Requirements":

[D]istribution ... shall be accomplished in the following manner:

A. To individuals by handing such materials to them personally.

B. To dwelling houses, places of business or any other structure by placing such materials on the entrance-way, on the porch, by the door or within the screen door or by placing such materials at or near the entranceway ... so as to be readily observable by the occupant thereof upon entry to same.

C. Placed in a receptacle or delivery box designated to receive all such materials or a tube designated for a like purpose.

Subsection D then provides that distribution "in a manner inconsistent with Paragraph A through C ... shall constitute a violation of this Ordinance." Subsection E then lists three types of distribution that are prohibited: (1) placing materials on sidewalks, lawns, etc., or other areas where such materials would be readily observable by passersby; (2) placing materials so as to "contribute or cause the accumulation of such materials that would indicate to ... passersby that such dwelling ... is vacant or unoccupied"; and (3) distributing materials in such a way that "makes it likely that

such materials will be blown away or scattered."

■ The plaintiff initially argues that the proscriptions contained in Paragraph E are void for vagueness. This court agrees that these provisions are impermissibly vague. The evils of a vague law are: that it may trap the innocent person, who must at least be given a reasonable opportunity to know what is prohibited and act accordingly; that it may foster arbitrary enforcement by failing to provide explicit standards for police; that it impermissibly delegates policy matters to police; and finally, that it may have a chilling effect on protected freedoms. *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972).

Subsection 1 is vague where it refers to "other similar areas ... readily visible to passersby." The question of ready visibility is too imprecise. Not all of subsection 1 is vague, however. "Curbs, sidewalks, lawns [and] driveways" are terms capable of being understood by the average citizen, and thus subsection 1 is basically acceptable, from the standpoint of vagueness.

Subsection 2 prohibits one from causing or contributing to an accumulation that would indicate to passersby that a place is vacant or "not unoccupied." (The court assumes that what is intended is "not occupied.") Here, the problem is that one would not know when the material one intends to distribute is the item that has now caused an impermissible accumulation, or whether that item is permissibly below the point of accumulation. Moreover, it appears that some accumulations under this subsection are legal. Only those which indicate something to passersby are illegal. This subsection cannot stand.

Finally, subsection 3, which proscribes distributions that are "likely" to be blown away, leaves one guessing, and cannot survive.

Although we have essentially eliminated Paragraph E from the ordinance, we do not ascribe much importance to that decision. Paragraph D clearly states that distributions inconsistent with the methods prescribed in A to C are prohibited. Paragraph E, in our judgment, therefore, merely enumerates *some* illegal distribution methods. The real issue, then, is whether it is constitutionally permissible for the Township of Monroe to restrict distribution to the three methods outlined in Paragraphs A to C: handing materials to persons; placing them at or near a dwelling's entranceway; or placing materials in tubes or delivery boxes.

■ As a "time, place, and manner" restriction, the ordinance must satisfy the three-pronged test enunciated in *Heffron v. International Society for Krishna Consciousness,* 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981). That is, the ordinance's restrictions must be imposed "without reference to the content of the regulated speech," must "serve a significant governmental interest," and must "leave open ample alternative channels of communication." *Id.* at 648, 101 S.Ct. at 2564. Where a regulation meets this test, it is *not* necessary that the regulation provide the least restrictive alternative necessary to serve the governmental interest in question. *See Tacynec v. City of Philadelphia,* 687 F.2d 793, 797–98 (3d Cir.1982).

Here, we believe that the ordinance is content neutral. The ordinance does not speak at all in terms of content. Rather, it covers *types* of written materials, and is inclusive enough to cover both commercial speech and non-commercial speech on any subject.

We next turn to the interests the ordinance is designed to serve. Prevention of crime is without a doubt a substantial and significant interest. *Pennsylvania Alliance for Jobs v. Borough of Munhall,* 743 F.2d 182, 187 (3d Cir.1984). Prevention of litter, however, has never been considered a particularly weighty objective. *See Schneider v. State,* 308 U.S. 147, 162, 60 S.Ct. 146, 151, 84 L.Ed. 155 (1939); *Ad World v. Doylestown,* 672 F.2d 1136, 1141 (3d Cir.1982). Nevertheless, we will assume, *arguendo,* that this objective is also substantial.

It is not enough that a regulation have legitimate purposes. The regulation must *"serve"* those purposes. As recently stated by the Third Circuit:

> Even where a substantial state interest is articulated, a regulation that only peripherally protects that interest or that is not directly connected to the evil it is designed to prevent can hardly be justified as a necessary restriction of first amendment rights. Accordingly, regulations ... must be precisely drawn to serve the interests they are designed to further.

*Pennsylvania Alliance for Jobs, supra,* at 187.

Looking to the ordinance in the instant case, the court does not believe that it serves particularly well its intended purposes. If a dwelling is unoccupied, the prescribed methods of delivery will still not prevent an accumulation of printed materials around the dwelling's entranceway or on its porch, or in and around a delivery box or tube on the dwelling's land. It would seem to this court that a burglar of any intelligence would still be capable of discerning that a dwelling was vacant, with only a slight additional effort. Likewise, it would seem that the chances of limiting litter are only marginally improved by the ordinance's prescriptions, since materials may blow off a porch or entranceway, or out of an overstuffed delivery box.

Regarding the crime justification, the Township has submitted affidavits of police officers which state that the accumulation of unsolicited materials fosters a climate for burglary. That may well be so, but the court is not persuaded that the ordinance as presently drafted serves to prevent accumulation. Moreover, the *Ad World* court was quite hesitant to accept unsubstantiated statements about the connection between paper accumulation and crime. 672 F.2d at 1140–41. Here, as in *Ad World*, there is "no evidence that, even *assuming* a positive correlation with crime ... accumulation is so widespread [as to] suggest more than a hypothetical or speculative increase in burglary." *Id.* at 1141.

*Compare Pennsylvania Alliance for Jobs, supra,* at 187 (record indicated actual correlation between door-to-door canvassing—the subject of the ordinance—and crime).

Accordingly, we hold that the ordinance is invalid because it fails to effectively serve the goals it is designed to achieve. It is thus unnecessary to address the availability of ample alternative methods of distribution. We note the *Ad World* court's concern with methods prohibitively expensive in terms of time or money. 672 F.2d at 1142. Here, however, the plaintiff has not apprised the court of any such information, and so our decision must rest entirely on the second prong of the *Heffron* test.

The Township will have to find a means to better serve its legitimate goals. It may draft a new ordinance, running the risk, of course, that an ordinance more effectively aimed at meeting those goals may not leave the plaintiff adequate alternatives for distribution. Or the Township may follow the suggestions of the *Ad World* court for achieving these goals without putting the onus on the party seeking to exercise a protected right.

The motion will be granted. The accompanying order will be entered.